Witkin *v.* City of Philadelphia, Appellant.

Argued March 16, 1933. Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Thomas B. K. Ringe,* and with him *James Hall Prothero* and *Ernest Lowengrund,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for appellant, cited: Malcolm v. Boston, 173 Mass. 312.

*Adda Lutz Ferguson,* and with her *Emanuel Romm,* for appellee, cited: Goldberg v. Philadelphia, 279 Pa. 356; Casper v. Philadelphia, 55 Pa. Superior Ct. 266.

OPINION BY CUNNINGHAM, J., October 2, 1933:

The sole question upon this appeal is whether the director of public safety of the City of Philadelphia has power, independent of the civil service commission, to impose a reasonable fine upon a police officer

The facts are not in dispute. On February 15, 1930, plaintiff, employed by the City of Philadelphia as a patrolman in the bureau of police of the department of public safety, was charged with neglect of duty and was called for a hearing before a police board of investigation. The board, after a hearing attended by plaintiff, recommended to the director of public safety the imposition of a fine, and the latter, on February 16, 1930, imposed a fine upon plaintiff of 90 days' pay (six dollars per day) with duty, and 120 hours of extra duty. Plaintiff continued to perform his services as a police officer, and a certain amount of his pay was withheld semi-monthly until the entire sum of $540 had been deducted. The fine imposed was in accordance with a schedule of fines embodied in the rules and regulations promulgated by the director of public safety.

Contending that the director was without authority

to impose fines, plaintiff sued the city to recover the amount so deducted from his pay. His contention was upheld by a judge of the court below, sitting without a jury, and judgment was entered in his favor, upon the ground that the Act of June 25, 1919, P. L. 581, (the so-called City Charter Act), which establishes the form of government of the City of Philadelphia, gave the director no such authority. The city now appeals from that judgment.

We have reached the conclusion that the judgment must be reversed. The court below acted upon the theory that the director of public safety has no powers except such as are expressly granted by the City Charter Act. This theory, however, was definitely discarded in the case of McCoach v. Phila., 273 Pa. 317, 117 A. 71, which held that the director of public safety might *demote* a police officer. Our Supreme Court there stated, as a general principle, that, "unless restrained by statute, a city may promote, demote or discharge a policeman at will, under the rule that the power which appoints may remove." It then pointed out that while no police officer may be *removed* or *discharged* except by the civil service commission, the act contained no restrictions upon the power of the director to make a demotion, except that it must be for a just cause, not religious or political.

If the director of public safety has power to demote, all the more should he have power to impose a fine. He is the superior officer of the Philadelphia police force. It is his duty to maintain discipline and efficiency in that force. If he is without power to punish for minor infractions, discipline and efficiency would soon disappear. Short of imprisonment, the most effective method of insuring obedience to regulations is that of imposing fines. This power would seem to be inherent in his office. Article V, section 3, of the City Charter Act provides that "The department of public safety shall have the care, management, administra-

tion, and supervision of the police affairs and all matters relating to the fire and police forces ......"
Article III, section 3, provides in turn that "Each department shall have power to prescribe rules and regulations, not inconsistent with any law or ordinance or with the provisions of this act, for its own government, regulating the conduct of its officers and employes, the distribution and performance of its business ......" If the power to make rules and regulations had not been expressly given, it would necessarily be implied; and, having made such rules and regulations as seem proper to him, the director should also have power to enforce them by imposing fines if necessary. Otherwise, he would be at the mercy of his subordinates.

The query upon which this case must turn is whether the City Charter Act contains any restriction upon the power of the director of public safety to impose fines. Policemen are included in the civil service of the city, the provisions as to which are embodied in Article XIX of the act. The pertinent clauses are as follows:

"Section 16, (P. L. 619). No person in the classified service, or seeking admission thereto, shall be appointed, promoted, suspended, reduced, or removed, or in any way favored or discriminated against, because of his political or religious opinions or affiliations. No inquiry in any application, examination or investigation shall relate to the religious or political affiliations of any person.

"Section 18. No officer, clerk, or employe in the classified civil service of such city shall be removed, discharged, or reduced in pay or position, except for just cause, which shall not be religious or political. Further, no such officer, clerk, or employe shall be removed, discharged, or reduced, except during the probationary period, until he shall have been furnished with a written statement of the reasons for such ac-

tion, and been allowed to give the removing officer such written answer as the person sought to be removed may desire. In every case of such removal or reduction, a copy of the statement of the reasons therefor and of the written answer thereto shall be furnished to the civil service commission, and entered upon its public records.

"No police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges may be filed by any superior officer or by any citizen or tax-payer, and shall, within thirty days after filing, be heard, investigated, and determined by the commission or by one of the commissioners or by some person or board appointed by the commission to hear, investigate, and determine the same. Where one person is appointed by the commission to hear such charges, he shall be a person learned in the law. Where a board is appointed to hear such charges, at least one member of such board shall be learned in the law. The hearing shall be public, and the accused and his counsel shall have the right to be heard.

"The finding and decision of the commission or commissioner or of such person or board, when approved by the commission, shall be certified to the appointing authority, and shall be forthwith enforced by such authority.

"Nothing herein contained shall limit the power of any superior officer to suspend a subordinate for a reasonable period, not exceeding thirty days, pending hearing and decision. Every such suspension shall be without pay: Provided, however, that the commission shall have authority to investigate every such suspension, and, in case of its disapproval, it shall have power to restore pay to the employe so suspended."

These sections have been concisely analyzed in Mc-

Coach v. Philadelphia, supra. 'They, first, contain a general prohibition against favoritism or discrimination of any sort upon political or religious grounds. Secondly, they provide that no employe in any branch of the classified civil service shall be removed, discharged or reduced in pay or position except for just cause, and upon being furnished with a written statement of the reasons for the action, to which an answer may be filed. Finally, they provide specifically as to policemen and firemen that they shall not be removed or discharged except upon written charges preferred before the civil service commission. As was pointed out in the McCoach case, the director of public safety, if he acts upon good cause, is the supreme power, except' so far as removals or discharges are concerned.

Since the act places no restriction upon the power of the director to impose fines, it must be held that he has this power. As was indicated in the recent case of Callahan v. City of Phila. et al., 312 Pa. 40, 167 A. 293, the director, and not the civil service commission, is the appointive power, and the executive head of his department. The initial function of the commission is limited to the certification of persons eligible for appointment. In the second place, it operates as a tribunal before which any cases of removal or discharge must be tried. The obvious intent of the act is, therefore, to provide that such persons as may be appointed policemen must have attained a certain standard of education and character, and also to make certain that if they are faithful in the performance of their duty, they may hold their positions without fear of arbitrary dismissal by reason of their religious or political affiliations. The act, however, nowhere gives to the commission any executive power over the police force. On the contrary, it leaves this power in the hands of the department of public safety and the director of public safety, as its chief officer. Indeed, any provision to the contrary

would create an intolerable situation, since, as a practical matter, the civil service commission could not sit to pass judgment upon the numerous petty acts of disobedience that naturally take place every day in the police force of a large city. The power to punish such ordinary infractions of the rules by demotions or fines was wisely permitted to remain in the director.

Nothing we have here said is in conflict with our earlier decision in Moreland v. City of Phila., 101 Pa. Superior Ct. 299. The facts there were that the director of public safety filed a report with the civil service commission on December 18, 1928, charging Moreland with conduct unbecoming an officer and disobedience of orders. On December 15th the director had suspended him, without pay, pending a hearing. The case was heard before the commission on December 28th, and Moreland was found guilty of the charges, but it was ordered that he be restored to duty with the penalty that he forfeit his pay during the period of suspension. Considering the punishment inadequate, the then director fined him 300 days' pay for the same offense for which he was tried. We there held that Moreland was entitled to recover the pay deducted, except for the period during which he was suspended. Our decision, however, was put squarely upon the ground that when the charges were preferred before the commission the matter passed beyond the jurisdiction of the director, and, consequently, the latter had no power to impose punishment for the same offense. As was said at page 303—"Whatever authority the director of public safety has to punish for violation of the rules of the department, after he suspended this man and charged him with certain misconduct, the report of which he sent to the civil service commission, the matter passed out of his hands and he had no further control over the sentence after it was imposed by the commission. ...... We do not decide whether he had any power to fine under the

rules and regulations of the department, independent of the commission, but we all are of the opinion that, having once committed the decision of the case to the commission, he could not veto or modify its action.''

In the present case, the matter at all times remained within the jurisdiction of the director. No complaint is made that the fine was imposed arbitrarily or without good cause, or that it was unreasonable in amount. On the contrary, it is conceded that it was in accordance with the regular schedule of fines promulgated by the director.

We cannot agree with the court below that the powers of the director of public safety should be determined by reference to such statutes as existed prior to the City Charter Act. The latter is complete in itself, and the legislative intent is not ambiguous. We hold that it gives to the director all powers appropriate and necessary to the proper administration of his office, except such powers as are expressly vested elsewhere. The legislature has, indeed, imposed certain restrictions, as above set forth, and it is only reasonable to assume that if it had deemed it wise to continue any previous restrictions, they, too, would have been specifically included.

The assignments of error filed in behalf of the City of Philadelphia are, accordingly, sustained.

Judgment reversed and here entered for defendant.